IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| EMILIO SANTA CRUZ BACARDÍ, BELIZA SARID RIVERA HERNÁNDEZ AND THEIR CONJUGAL PARTNERSHIP<br><br>Plaintiffs<br><br>vs.<br><br>FERNANDO CARBONELL TORRES AND ABC INSURANCE.<br><br>Defendants | CIVIL NO.: 23-cv-01277-SCC<br><br>CIVIL ACTION<br><br>PLAINTIFFS DEMAND JURY TRIAL |

**STATEMENT OF UNCONTESTED MATERIAL FACTS IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

TO THE HONORABLE COURT:

COME NOW Codefendants, CPA Fernando Carbonell ("Defendant" or "Mr. Carbonell") and Universal Insurance Company (UNICO), (jointly, Codefendants), through the undersigned legal representative and very respectfully submit their Statement of Uncontested Material Facts in support of their Motion for Summary Judgment filed on this same date, as follows:

The uncontested material facts arise from the following documents:

- **Exhibit I:** Deposition of Emilio Santa Cruz ("Plaintiff"), taken on December 16, 2024;
- **Exhibit II:** Continuation of the deposition of Plaintiff, taken on December 17, 2024;
- **Exhibit III** Continuation of the deposition of Plaintiff, taken on February 14, 2025;
- **Exhibit IV:** Deposition of CPA Edgardo J. Areizaga Soto, plaintiff's expert witness, taken on February 5, 2025;
- **Exhibit V:** Defendant Fernando Carbonell's Answer to Plaintiff's First Set of Interrogatories and request for production of documents of July 10th, 2024, including one of its exhibits (excerpt of the Final Report of the Executrix); and
- **Exhibit VI -** Final Order in Civil Case No. KJV2015-1888 issued on November 25, 2024.

A. **Judicial Proceedings Before the Probate Court (Civil Case No. KJV 2015-1888)**

1. Mr. Juan Santa Cruz Sigarreta ("Mr. Santa Cruz Sigarreta" or the "decedent") passed away on August 14, 2015, leaving a last will and testament. (**Exhibit I, P. 28, L. 3-6**.) He established that his heirs were his 3 children: Emilio Santa Cruz Bacardi (Plaintiff), Juan Santa Cruz Bacardi, Mireya Santa Cruz Bacardi, and his wife, Mireya Bacardi González ("Plaintiff's mother" or "Mrs. Bacardí"). He also appointed Mireya Bacardi González, as the executrix of his estate. (**Exhibit I, Page 30, 10 -25; P. 31, L. 1**.)

2. On October 1, 2015, Mrs. Bacardi filed a petition for the issuance of letters testamentary pertaining to the estate of Mr. Santa Cruz Sigarreta, before the First Instance Court of Puerto Rico, civil case no. KJV2015-1888. (**Third Amended Complaint, ¶ 10; Answer to Third Amended Complaint, ¶ 10**.)

3. At the request of Mrs. Bacardi, on June 23, 2016, the probate court appointed certified public accountant Fernando Carbonell ("Mr. Carbonell" or the "Defendant") as the partitioner accountant with the approval of all the heirs on June 23, 2016. (**Exhibit I, P. 32, 24 -25; P. 33, 1-3, 19-21; P. 40, L. 16-21**).

4. Plaintiff did not object to the appointment of Mr. Carbonell as partitioner accountant. (**Exhibit I, P. 32, L. 24-25; P. 33, L. 1-3; 19-21.**)

5. Before submitting the Partition Report, Mr. Carbonell requested relevant information from the heirs to identify all estate assets. (**Exhibit 1, P. 44, L. 16-23.**) Regarding the entity S.A. Curtibe, which Plaintiff requested that it be included in the report, Mr. Carbonell asked the heirs—including the executrix—for any registration documents and financial information evidencing any ownership interest by the decedent. (**Exhibit I, excerpt from the *Partition***

2

*Report*, identified as <u>Exhibit 1</u> of this deposition, at page. 4.)

6. According to the Plaintiff, the financial records and registration documents pertaining to S.A. Curtibe were not in his possession, but rather in the hands of his mother and his brother, Juan Santa Cruz Bacardi ("Mr. Juan Santa Cruz"). (**Exhibit 41, P. 16-25; P. 42, P. 1-8; P. 43, L. 7-16.**)

7. The information that Plaintiff provided to Mr. Carbonell regarding S.A. Curtibe prior to the issuance of his report demonstrated the existence of S.A. Curtibe but it did not establish or identify whether S.A. Curtibe formed part of the conjugal partnership (*sociedad legal de bienes gananciales*) constituted between Mrs. Bacardi and Mr. Santa Cruz Sigarreta. (**Exhibit I, P. 51, L. 11-21**.)

8. On October 13, 2016, Mr. Carbonell submitted the *Partition Report for the Estate of Juan Santa Cruz Sigarreta* (hereinafter the *"Partition Report"*), which covered transactions from August 14, 2015, through August 31, 2016. Mr. Carbonell circulated the report with all heirs via email and filed it with the probate court.[1] (**Exhibit I, P. 33, L. 22-25; P. 34, L. 1-14**; <u>see also the excerpt from the *Partition Report*, identified as <u>Exhibit 1</u> of this deposition</u>.)

9. In the *Partition Report*, Mr. Carbonell did not dispute the existence of S.A. Curtibe, on the contrary, he affirmed the following:

> "[w]ith respect to the Curtibe corporation which one of the heirs requested that it be included in the report, we requested all the heirs, including the executrix, to provide us with all the registry and financial information they had in their possession that evidences some participation of the deceased on the date of his death. As of the date of this report, no documentation or information has been received in this regard, so we are unable to include it in our report at present." (**Exhibit I, P. 39, L. 9-22; P. 40, L. 9-15.** <u>See</u> also the excerpt from the *Partition Report*, identified as <u>Exhibit 1</u>

---

[1] The *Partition Report for the Estate of Juan Santa Cruz Sigarreta* was filed with the probate court as *Attachment* of the *Informative Motion* of October 13, 2016. See Exhibit 1 of Exhibit I.

**of this deposition, P. 4**.)

10. After receiving the Partition Report, Plaintiff read it and considered that it was incomplete. (**Exhibit I, P. 39, 6-8; P. 40, 22-25; P. 41, 1-15**.)

11. Notwithstanding, Plaintiff did not object to the *Partition Report*. (**Exhibit I, P. 64, L. 2-9; P. 67, L. 24-25; P. 68, L. 1-2.**)

12. Article 603 of the Special Legal Proceedings Act, 32 P.R. Laws Ann. §2624, states, in relevant part, the following:

   > "If, during eight (8) days after notice of the filing of the report no objections to the report are filed, the judge of the Court of First Instance shall approve it and make an order for partition, division, or distribution in accordance therewith." 32 L.P.R.A. § 2624.

13. By *Order* dated January 18, 2017, which was notified and filed in the case docket on January 23, 2017, the probate court approved the *Partition Report* and ordered that the partition, division, or distribution [of the estate] accordingly.[2] (**Exhibit I, p. 69, L. 2-7**.) In compliance with the order, Ms. Bacardi proceeded to distribute the estate as established in the *Partition Report*. (**Exhibit I, p. 69, L. 17-20**.) In accordance with the distribution, Plaintiff received a $240,850.00 manager's check as his share. (**Exhibit I, P. 70, L. 6-11; Exhibit IV, P. 50, L. 11- P. 51, L. 15**.)

14. Plaintiff did not challenge the *Order*; he neither appealed nor moved for reconsideration of the probate court's approval of the *Partition Report*. (**Exhibit I, P. 68, L. 10-25; P. 69, L. 1-9**.)

15. Following the approval of the *Partition Report*, Plaintiff intervened in the probate action on the grounds that certain assets appeared to be missing and that the executrix had failed to submit the

---

2 Order from January 18, 2017, which was notified and filed in the case docket on January 23, 2017.

4

required quarterly reports. (**Exhibit III, P. 54, L. 2-12, 15-19**.)

16. Also, Plaintiff filed a writ of certiorari with the Court of Appeals of Puerto Rico on February 21, 2018. After several procedural events, the Court of Appeals entered *Judgment* on June 15, 2018, affirming that the *Partition Report* had been accepted without objection and held that the Plaintiff had waived his right to challenge it. (**Exhibit I, P. 75, L. 8-25; P. 76, L. 10-25; P. 77, L. 1-5. See, Court of Appeals *Judgment* entered on June 15, 2018, pp. 22-23, included as Exhibit 3 of Exhibit I**)

17. The Court of Appeals also determined that information regarding S.A. Curtibe, had to be subjected to discovery, and ordered the executrix to render the final accounts of her work in said capacity, to be examined by the heirs. (**Exhibit I, P. 72, L. 12-20**.)

18. Regarding Plaintiff's allegations concerning the existence of additional assets, the Court of Appeals ordered the following:

> Nevertheless, Ms. Mireya Bacardi must render the final accounts of her work as executrix, summoning the heirs. She must pay special attention to the requested information about the properties, assets, and economic interests claimed by the petitioner in his numerous filings before the Court of First Instance. The final decision about the final accounts must be in keeping with the provisions of Articles 588 to 592 of the Special Legal Proceedings Act, *supra*.

(**See, Court of Appeals *Judgment* entered on June 15, 2018, at p. 28, included as Exhibit 3 of Exhibit I.**)

19. Upon confirming the approval of the *Partition Report*, the Puerto Rico Court of Appeals ordered the continuance of the procedures before the probate court and required Mrs. Bacardi to specifically address Plaintiff's assertions of the assets, accounts and economic interests allegedly pending inclusion in the inventory and accounting as part of the decedent's estate. (**See, Court of Appeals *Judgment* entered on June 15, 2018, at p. 27, included as Exhibit 3**

    **of Exhibit I.**)

20. As a result, Mrs. Bacardi requested that Mr. Carbonell prepare a final report accounting for all transactions that occurred from the date the *Partition Report* was rendered through April 23, 2017. At that time, Mr. Carbonell was provided with information about the account of the S.A. Curtibe, which was not available when he prepared the *Partition Report* back in 2016. Pursuant to Mrs. Bacardí's request, Mr. Carbonell rendered the document titled *Report on the Estate of Juan Santa Cruz Sigarreta, Transactions from August 24, 2016, to April 23, 2017 (hereinafter the "Final Report of the Executrix")* in which he included the amount therein for its distribution between the beneficiaries of the estate. (**Exhibit V.**)

21. The probate court limited the scope of the discovery to the *Final Report of the Executrix*. (**Exhibit I, P. 133, L. 14-18; Exhibit II, P. 17, L. 5-6.**) Specifically, the court determined that both Plaintiff and the executrix agreed that the only asset pending adjudication—namely, whether it should be included in the decedent's estate—was the S.A. Curtibe account. After reviewing the case file, Judge Elisa Fumero ordered the executrix to submit a final report and scheduled an evidentiary hearing to determine the legal nature of S.A. Curtibe. The court further instructed that the parties present evidence as to whether the entity formed part of the decedent's estate and, if deemed a community property asset, what portion, if any, would fall within the surviving spouse's usufructuary rights. The court emphasized that, *"without certainty as to the legal nature of Curtibe as a juridical person, this Court cannot, at this stage, determine whether the amount in question is part of the widow's private property.* (**Exhibit II, P. 19, L. 5-12 and pp. 8-9 of the Resolution of March 8, 2023, issued by Hon. Judge Elisa Fumero, marked as Exhibit 11 of Exhibit II - Plaintiff's deposition, taken December 17, 2024-.**)

6

22. Plaintiff's counsel explained to him the implications of the court's determination. Plaintiff did not challenge the ruling; he did not file a writ of certiorari. (**Exhibit I, P. 135, L. 7-12; P. 136, L. 1-20**.)

23. Over the next several years, and with the successive participation of different judges who presided over the probative action before the First Instance Court of Puerto Rico, the parties engaged in discovery, including: (1) serving interrogatories and requests for the production of documents, (2) Plaintiff retention of CPA Reynaldo Quiñones, who rendered an expert report, and (3) Plaintiff's deposition of CPA Carbonell and the executrix. (**Exhibit II, P. 17, L. 5-6; P. 28, L. 16-25; P. 29, L. 1-25; P. 30, L. 1-25; P. 31, L. 1-25; P. 32, L. 1-25.**)

24. As an *interventor* in the letters testamentary proceeding, Plaintiff believed it was unnecessary to engage the services of an expert witness. However, he subsequently retained CPA Reynaldo Quiñones -on his own initiative, not on legal advice- to review the *Partition Report* and determine whether it was accurate and in compliance with applicable legal standards, or, alternatively, to substantiate Plaintiff's concerns that the report was incomplete or deficient. (**Exhibit II, P. 24, L. 22-25; P. 25, L. 1-25; P. 26, L. 1-7**.)

25. For the preparation of his expert report, Mr. Quiñones received the same documents that Mr. Carbonell had been provided by Plaintiff. (**Exhibit II, P. 26, L. 8-15**.)

26. Regarding the corporate shares of Bacardi Limited, Mr. Quiñones stated that both the value of the shares and their classification as either conjugal or separate property remained undetermined. He further opined that Plaintiff's—and the co-heirs'—potential entitlement to additional funds derived from S.A. Curtibe would ultimately depend on whether the executrix could produce the necessary evidence to establish that the shares were her separate property, thereby rebutting the

presumption of conjugal ownership. Conversely, if the presumption of conjugal ownership is not rebutted, the shares would be deemed part of the marital estate. Mr. Quiñones concluded that this latter issue fell within the exclusive purview of the court. (**Exhibit I, P. 98, L. 22-25; P. 99, L. 1-10; P. 100, L. 5-25; P. 101, L. 1-3; 19-25; P. 102, L. 1-6; 18-25; P. 103, L. 1-4. See also pp. 18-22 of Mr. Quiñones' report of April 14, 2021, marked as Exhibit 2-A of CPA Areizaga's deposition, marked as Exhibit IV.**)

27. An evidentiary hearing on the *Final Report Submitted by the Executrix* was held on July 17, 2024, and September 9 and 13, 2024, during which the court heard live testimony from: CPA Fernando Carbonell, José Bacardi González, Josefina Bacardi González, Mireya Bacardi González, Juan Santa Cruz Bacardi, Mireya Santa Cruz Bacardi, and Emilio Santa Cruz Bacardi. CPA Reynaldo Quiñones was available but was not questioned by Plaintiff's legal counsel, nor by the opposing parties. (**Exhibit III, P. 45, L. 6-20; P. 46, L. 6-25; P. 47, L. 1**; **Exhibit VI, P. 4**)

28. Additionally, the court received the following documentary evidence: *Report on the Estate of Juan Santa Cruz Sigarreta, Transactions from August 24, 2016 to April 23, 2017*, signed on February 13, 2019 by CPA Fernando Carbonell; *Preliminary Report of CPA Reynaldo Quiñones*; *Donation Document* of August 25, 2006, whereby Mrs. Bacardi's father, Emilio Bacardi Rosell, donated 5,000 shares to each of his two daughters; letter of July 3, 2006, from the Law Offices of Galindo, Arias & López to Mireya Bacardi González, including Public Instrument of June 20, 2006, executed in Panamá, whereby Inversiones S.A. Curtibe, is incorporated, as well as its Articles of Incorporation and the Trust Agreement executed by S.A. Curtibe, (**Exhibit III, P. 48, L. 5-24; P. 49, L. 23-25; P. 50, L. 1-3**; **Exhibit VI, P. 4**)

8

29. Plaintiff did not present any evidence before the probate court or the Court of Appeals establishing that his father was a shareholder of S.A. Curtibe, other than the Trust Agreement executed by S.A. Curtibe, which did not establish that the decedent had any ownership interest in said entity**.** (**Exhibit III, P. 80, 24-25; P. 81, L. 1-5**.)

30. Plaintiff lacks any evidence to establish that his late grandfather donated shares to the decedent. (**Exhibit III, P. 83, L. 4-7**.)

31. The Probate Court approved the *Final Report Submitted by the Executrix*, prepared by Mr. Carbonell. **In doing so, the court held that S.A. Curtibe and the funds in question were privative assets belonging solely to Mrs. Bacardí and not part of the decedent's estate**. The court determined that the *Final Report Submitted by the Executrix* was just and correct. (**Exhibit III, P. 62, L. 8-11p. 77, L. 1-19; Exhibit VI -** *Final Order* **in civil case no. KJV2015-1888 issued on November 25, 2024**)

   B. <u>**Deposition Testimony of Plaintiff's Expert Witness, CPA Eduardo Javier Areizaga**</u>
   
   i. <u>*Regarding the Partition Report and the Final Report Submitted by the Executrix*</u>

**32.** Since 2000, Mr. Areizaga has had his own practice as CPA and lawyer. (**Exhibit IV, P. 29, L. 1 – P. 31, L. 25.**)

33. Mr. Areizaga acknowledged that CPA Reynaldo Quiñones was originally Plaintiff's expert witness and that he later replaced him, adopting Mr. Quiñones' report in its entirety. Before adopting Mr. Quiñones' report, he read it in full. He confirmed that no amendments were made to the report after he adopted it. (**Exhibit IV, P. 102, L. 3 – 18; P. 123, L. 13–15.**)

9

34. Mr. Areizaga identified his expert report (**marked as Exhibit 2 of his deposition**) and confirmed that Exhibit A to his report is the report of CPA Reinaldo Quiñones. (**Exhibit IV, P. 43, L. 10 – P. 47, L. 21**.)

35. Mr. Areizaga is of the opinion that his expert report does not comply with the requirements of Rule 26 of the Federal Rules of Civil Procedure. (**Exhibit IV, P. 120, L. 19 – P. 122, L. 18**.)

36. Based on his professional experience, he opines that a party cannot successfully assert a claim for damages arising from a partition report that was approved by all heirs, ratified by the trial court, and subsequently affirmed by the appellate court. (**Exhibit IV, P. 28, L. 20 – 25**.)

37. Mr. Areizaga confirmed that Mr. Carbonell did not dispute the existence of S.A. Curtibe but instead, that although one of the heirs requested the inclusion of S.A. Curtibe in the report, he was unable to do so because he did not receive documentation or financial information concerning the entity. (**Exhibit IV, P. 39, L. 9 – P. 40, L. 18**.)

38. He concurred with [Mr. Carbonell's] assessment and affirmed that, in his own professional practice, he does not include information in a report unless such information is made available to him. (**Exhibit IV, P. 40, L. 19 –25; P. 41, L. 4.**)

39. Neither Mr. Areizaga nor Mr. Quiñones reviewed any original documentation concerning the ownership, formation, or purpose of S.A. Curtibe prior to issuing their respective expert reports. They both confirmed that no such documents were available. (**Exhibit IV, P. 77, L. 19- P. 78, L. 1-8.**) Furthermore, there were no documents indicating that any property had been transferred to an anonymous partnership. (**Exhibit IV, P. 78, L. 9-21.**)

40. Mr. Areizaga testified that he was not aware of any property having been transferred to S.A. Curtibe, nor did he know the value of any such transfer. According to his report, Mr. Quiñones

likewise had no knowledge of such a transfer. (**Exhibit IV, p. 79–81, L 1- 2**.)

41. Mr. Areizaga also stated that he did not know whether the shares in question [from S.A. Curtibe] were of private or conjugal nature. (**Exhibit IV, P. 80, L. 21 – P. 81, L. 2**.)

42. He did not examine any transactions or financial activity by S.A. Curtibe. (**Exhibit IV, P. 81, L. 12-15.**)

43. Mr. Areizaga admitted that during a pre-deposition meeting with counsel and Mr. Quiñones, they discussed the exclusion of S.A. Curtibe from the partition report and characterized it as a significant omission. Nevertheless, he confirmed that even five years after the issuance of the *Partition Report*, when he prepared his report, Mr. Quiñones still lacked the necessary information to include S.A. Curtibe in his expert analysis. (**Exhibit IV, P. 82, L. 25 – P. 83, L. 1-16.**)

44. Mr. Areizaga acknowledged that if the court's decision becomes final and S.A. Curtibe is declared private property, the alleged "error" noted in Quiñones' report (at p.43) would no longer be valid. (**Exhibit IV, P. 93, L. 21 – P. 95, L. 22.**)

45. Mr. Areizaga further confirmed that neither he nor Mr. Quiñones had access to complete information necessary to: (1) assess the actual value of the St. John property at the time their respective reports were prepared (**Exhibit IV, P. 100, L. 4-13**); (2) determine the nature—whether private or conjugal—of the Bacardi stock and dividends (**Exhibit IV, P. 100, L. 14-22**); or (3) make a conclusive determination regarding the adjudication of losses related to the Popular Securities investments, as referenced in item #4 of Mr. Quiñones' report, which Mr. Areizaga adopted. (**Exhibit IV, P. 100, L. 14- P. 101, L. 1.**)

46. He does not know whether Mr. Carbonell had access to that information at the time he prepared

11

the *Partition Report*. (**Exhibit IV, P. 103, L. 16-21**.)

47. He is not aware of any additional documents, working papers, or information that would have required Mr. Carbonell to amend the *Partition Report* or the final accounts. (**Exhibit IV, P. 110, L. 12-17**.)

### ii. Regarding the Allegations of Fraud and Collusion Against Defendant.

48. Mr. Areizaga confirmed that neither him nor Mr. Quiñones concluded that CPA Fernando Carbonell engaged in fraud or acted negligently in the preparation of the *Partition Report*. (**Exhibit IV. P. 123, L. 16 – P. 124, L. 12**.)[3]

**C.** **Plaintiff's Claim Accrual Date: March 1, 2018; Plaintiff's claim, therefore, is time-barred**

49. On March 1, 2018, Plaintiff sent a letter to Defendant in which, among other things, he demanded that the *Partition Report* be amended and asserted that the Defendant had failed to fulfill his duties as partition accountant. In the same letter, Plaintiff warned Defendant that Clause Nine of the will—which, as he understands it, prohibits the heirs from challenging the distribution of the estate– did not bar him from claiming damages against Defendant. Plaintiff further stated that, as of March 1, 2018, he had reason to believe that Mr. Carbonell was acting in concert with Mrs. Bacardi. Plaintiff perceived that his mother and brother were operating under the assumption that Clause Nine of the will afforded them the leeway to conceal assets from him, conduct that, in Plaintiff's view, could not have been carried out without the support or acquiescence of Mr. Carbonell. By then it was, in his words, "obvious to me that the only way my mother and my brother had to, because they're... They had to hide this from the report

---

3 Pursuant to Order at Docket 198, Defendant incorporates by reference the arguments presented to the Court in the "Motion to Strike [...] filed at Docket 198".

is to have Fernando's support." By March 1, 2018, Plaintiff knew he could file a complaint against Mr. Carbonell and claim compensation because of his alleged collusion. (**Exhibit I, P. 31, L. 2-19**; **Exhibit II, P. 86, L. 1-6; 23-25; P. 87-88, P. 89, L. 12 -25: P. 90, L. 1-6; P. 91, L. 16-18, 20-25; P. 92, L. 1-13**. **See also letter of March 1st, 2018, marked as Exhibit 5 of Plaintiff's Answers to Interrogatories and Request for Production of Documents which, in turn, was marked as Exhibit 2 of this Exhibit I.**)

50. As of March 1, 2018, Plaintiff was aware that he could challenge the report pursuant to Article 603 of the *Special Legal Proceedings Act*, supra, which provides as follows:

> "[i]f the report were challenged due to bribery, conspiracy, fraud or misconduct in the proceeding, and there were substantial grounds for the accusation, the judge shall remove the commissioner and direct a copy of the proceedings and of the evidence to be placed in the hands of the prosecuting attorney of the court of first instance for the institution of the corresponding proceedings and set aside the report and appoint another commissioner to make a new partition".

However, he refrained from doing so in order to "afford [Mrs. Bacardi] and Mr. Carbonell another opportunity to come through". (**Exhibit II, P. 93, L. 3-24**.)

51. Plaintiff became aware that Mr. Carbonell had been retained by Mrs. Bacardi as her expert in the probate action before the First Instance Court of Puerto Rico—specifically, to prepare the *Final Report Submitted by the Executrix*— only when Defendant was subpoenaed for deposition in December 2021. Plaintiff stated it was then that he learned that Mr. Carbonell was seeking compensation as an expert witness. In response to the service of said subpoena, Attorney Katarina Stipec Rubio filed a Motion to Quash Subpoena on December 9, 2021. (**Exhibit III, P. 38, L. 4-25; P. 39, L. 1-6; P. 41, L. 19-24; P. 42, L. 1-6, 20 -25; P. 43- P. 44, L. 9-13, 25; P. 45, L. 1-2. See Exhibit 14 of this deposition**.)

52. On February 13, 2023 – nearly five years after his March 2018's letter – Plaintiff, through

13

counsel, submitted his first and only extrajudicial claim to Mr. Carbonell, seeking not less than $1,664,701.80 for damages that allegedly came because of Mr. Carbonell's failure to perform his duties as partition accountant in an impartial manner. (**Exhibit III, P. 64, L. 4-25; P. 65, L. 13-25; p. 66, L. 1-4. <u>See</u> also the extrajudicial claim, marked as Exhibit 15 of this deposition.**)

53. These facts demonstrate that Plaintiff's claim accrued no later than March 1, 2018, when he clearly acknowledged both the alleged damage (alleged concealment of estate assets) and the person he believed responsible (Defendant). Plaintiff's own testimony and contemporaneous correspondence confirm he had actual knowledge of the facts he now asserts as the basis for his alleged cause of action. Because the extrajudicial claim was not submitted until February 13, 2023, and no other tolling action was taken in the interim, Plaintiff's claims are time-barred under Puerto Rico's one-year statute of limitations for tort actions, 31 L.P.R.A. § 5298. (**Exhibit I, P. 31, L. 2-19**; **Exhibit II, P. 86, L. 1-6; 23-25; P. 87-88, P. 89, L. 12 -25; P. 90, L. 1-6; P. 91, L. 16-18, 20-25; P. 92, L. 1-13**. <u>See</u> **also letter of March 1st, 2018, marked as Exhibit 5 of Plaintiff's Answers to Interrogatories and Request for Production of Documents which, in turn, was marked as Exhibit 2 of Exhibit I; Exhibit III, P. 38, L. 4-25; P. 39, L. 1-6; P. 41, L. 19-24; P. 42, L. 1-6, 20 -25; P. 43-P. 44, L. 9-13, 25; P. 45, L. 1-2, P. 64, L. 4-25; P. 65, L. 13-25; p. 66, L. 1-4. <u>See</u> Exhibits 14 and 15 of this deposition.**)

D. **<u>Plaintiff Lacks Evidentiary Basis for Establishing that Defendant Entered into a Mutual Understanding or Coordinated Efforts with Mrs. Bacardí with the Intent to Impair His Hereditary Rights.</u>**

54. On May 30, 2023, Plaintiff filed this claim against Mr. Carbonell for alleged negligence, fraud, and failure to fulfill his duties as appointed accountant of Mr. Santa Cruz Sigarreta's Estate.

14

The crux of Plaintiff's contention is that Mr. Carbonell acted in collusion with Mrs. Bacardi and purposely left out of the *Partition Report* and the *Final Report Submitted by the Executrix* assets from S.A. Curtibe to benefit her [Mrs. Bacardi] and prejudice him [Plaintiff]. (**See Complaint, at Docket 1; Exhibit II, P. 108, L. 23-25; P. 109-110; P. 111, L. 1-9**; **Exhibit III, P. 29, L. 1525; P. 30, L. 1-23; P. 68, L. 9-12.**

55. Plaintiff claims that the end purpose of the collusion was to commit fraud. (**Exhibit III, P. 68, L. 9-12.**) According to Plaintiff "[t]here was a plan and everybody was in it [...] not to put the assets in the partition report, Curtibe's and the Bacardi Limited in the account." (**Exhibit III, P. 29, L. 15-25; P. 30, L. 1-23**.)

56. According to Plaintiff, Mr. Carbonell's request for payment of fees upon being subpoenaed for a deposition confirmed that Defendant was acting in collusion with Mrs. Bacardi. Plaintiff contends that most of the omissions and deficiencies in Mr. Carbonell's report are the result of said collusion, whereby Mr. Carbonell and Mrs. Bacardi, without the Plaintiff's knowledge, agreed that Mr. Carbonell would prepare the report in a manner that favored her interests to the detriment of the Plaintiff. (**Exhibit II, P. 108, L. 23-25; P. 109-110; P. 111, L. 1-9**. <u>See</u> **also** *Plaintiff's Answers to Defendant's Interrogatory and Request for Production of Documents*, **marked as Exhibit 2 of Exhibit I, particularly, the production of documents in response to Request No. 2, regarding the evidence in support of allegations of collusion in paragraphs 21-24 of the Complaint**.)

57. Plaintiff infers Defendant's alleged involvement in the alleged plan to conceal assets based on circumstantial reasoning rather than direct evidence:

> **Q:** Okay, so what makes you think that Fernando [Carbonell] was in that plan?

**A:** Because there's no... Okay, besides that, there's no other way that they could do it without the partitioner. If he decides it's got to go in, it got to go in. There's no other way. Besides that, I've been sending him letters and talking to him and he never responded, never told me listen, I cannot use Curtibe what you gave me. That is no good for me. I need something else. I never got any response. And then in the deposition, which, by the way, was limited to the final account, not to his first report. It was limited. I could never ask any question about that.

(**Exhibit III, P. 31, L. 7-19; P. 32, L. 1-19; P. 34, L. 13-23.**)

58. Plaintiff referenced no direct evidence of collusion; rather, he was "hoping" witnesses would support his claims. According to Plaintiff, the allegations of negligence would be supported by Plaintiff's testimony, Mr. Carbonell's partition report (as approved by the probate court), the report of an expert witness (particularly the accounting content), and "whatever comes out of the next depositions, if there's so.   [H]e doesn't know what is going to come out" (**Exhibit III, P. 68, L. 6-25; P. 69-P. 70, L. 1-9, 16-25; P. 71, P. 1-9; P. 89, L. 3-20).**

59. On the other hand, the allegations of collusion and fraud will be substantiated on the testimony of the following witnesses: Attorney Caridad Muñiz, Attorney Rafael Morán, Mrs. Mireya Bacardi González and Mr. Juan Santa Cruz Bacardi. Plaintiff is unaware of the substance of the testimony that would have been provided by his brother and Attorney Muñiz. (**Exhibit I, P. 147–150, L. 19**.)

60. Discovery concluded on May 15, 2025. (**Docket 184.**) Neither Attorney Caridad Muñiz nor Attorney Rafael Morán or Mireya Bacardi were ever deposed or gave sworn testimony in the instant case. Regarding non-party attorney Caridad Muñiz, the Court granted her motion to Quash filed at Docket No. 117, because "allowing discovery to advance with Muñiz Padilla's deposition would be premised on sheer speculation and unduly burdensome". (**Docket 133**.) Plaintiff was not able to subpoena Attorney Rafael Morán. (**Exhibit III, P. 36, L. 6-18**.) Also, the deposition of Mrs. Mireya Bacardi did not proceed. In lieu thereof, the Court directed Mr.

16

Carbonell to produce specific financial information pertaining to Juan Santa Cruz Sigarreta. (**Docket 183**).

WE HEREBY CERTIFY that on this same date, we electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all attorneys of record.

RESPECTFULLY SUBMITTED.

In San Juan, Puerto Rico, this June 13, 2025.

**S/DEBBIE E. RIVERA RIVERA**
USDC-PR 219409

**SANTORI AYMAT & RIVERA, LLC**
PO Box 19115
San Juan, PR 00910
Tel.: (787) 523-4030
Fax: (787) 523-4031
E-M: debbie.rivera@sarlawpr.com


**S/FRANCISCO J. AMUNDARAY**
USDC-PR-208706

**AMUNDARAY, VILLARES & ASSOCIATES, PSC**
P.O. BOX 9023980
SAN JUAN, PR 00902-3980
TEL. (787) 273-0611
FAX (787) 273-1540
E-MAIL: fjamundaray@gmail.com